Ex parte ROMANO.

(District Court, D. Massachusetts. January 10, 1918.)

No. 1590.

1. ARMY AND NAVY ⊕⇒20—SELECTIVE DRAFT ACT—FAIR HEARING.
   Administrative boards, as those authorized by the Selective Draft Act, are bound to deal fairly with the individual, and where a nondeclarant alien, not subject to military service and claiming his exemption, was not given a fair hearing, the courts will grant relief unless he is accorded a fair hearing by the draft boards.

2. ARMY AND NAVY ⊕⇒20—SELECTIVE DRAFT ACT—FAIR HEARING.
   A nondeclarant alien, who claimed exemption and was not subject to service under the Selective Draft Act, held not to have been given a fair hearing by the draft boards which inducted him into military service.

3. ARMY AND NAVY ⊕⇒20—SELECTIVE DRAFT ACT—INDUCTION INTO MILITARY SERVICE—EFFECT.
   Where a nondeclarant alien, who was not subject to military service, and who claimed his exemption, was inducted into service by the draft boards without a fair hearing, their action is not void, though irregular, and hence, the alien having failed to report, the military authorities have jurisdiction to hold him for desertion.

Habeas Corpus. In the matter of the petition of Pietro Romano. Petition dismissed without prejudice to petitioner's right to file another petition.

Joseph T. Zottoli, of Boston, Mass., for petitioner.

MORTON, District Judge. The petitioner is a laborer, born in Italy, who has resided about 4½ years in this country. He is married, and his wife is living with him in Lynn, Mass. His knowledge of English is very limited, quite insufficient to enable him to under-

---

stand explanations in it of such matters as those involved in the Selective Service Act (Act May 18, 1917, c. 15, 40 Stat. 76). He has never declared an intention to become a citizen of this country, and was not subject to military service under the act.

He duly registered under it, being within the required ages. At that time he explained that he was an alien and was told—by whom does not clearly appear—that, if he did not serve here, he would be sent back to Italy to do so there.

He was called for physical examination, and, after being examined, attempted to explain to Mr. Reeve, chairman of the local board, that he was an alien and had a wife dependent on him for support. The conference was hurried and unsatisfactory, because of the large number of cases with which Mr. Reeve had to deal. He understood Romano to say that he was only 18 years old, and claimed discharge because of that and of his wife. He accordingly filled out an application for discharge on those grounds, and gave Romano proper blanks for the affidavits. He did not understand that Romano claimed exemption because he was an alien. About a week later Romano employed a lawyer, who filled out the blanks which had been given him by Mr. Reeve. Discharge on those grounds was refused.

While the evidence is conflicting, I think it probable that Romano went to Mr. Reeve again and tried to explain through an interpreter that he desired to claim exemption as an alien, and was rather brusquely treated. I do not think that Mrs. Romano would have taken the trouble to go to the Adjutant General's office at the Statehouse and complain about the treatment accorded her husband, if there had not been some interview such as her husband testifies to between him and Mr. Reeve. At the Adjutant General's office, Mrs. Romano, who speaks English well, was given a marked copy of the rules, which she and her husband showed to Mr. Reeve on October 4th, the day when the petitioner was ordered to report for mobilization. Mr. Reeve at that time told them the case was beyond his control, and that Romano must go to Camp Devens the next day, as notified, and press his claim there.

Romano did not report as ordered, nor go to Camp Devens. He was arrested as a deserter, and is now held by the military authorities on that charge.

After his arrest, the Adjutant General's office at the Statehouse suggested to Mr. Reeve that the case be reopened, and transmitted the papers for that purpose. Certain important affidavits, the only substantial evidence on the point of alienage, which had been filed with the district board, ought to have been included, but by mistake were not. The local board knew who the petitioner's counsel were, and could easily have notified them or him that the case was to be reopened, and that further evidence might be submitted, but did not do so. At a closed session of the board, the case was taken up, reopened, and closed again, all within a few minutes; nobody knowing about it except the members of the board.

The result of the whole proceeding is that a man not liable to service under the act, and who has almost from the beginning en-

deavored, though in an unskilled and inaccurate way, on account of his ignorance of our language and law, to obtain the exemption to which he was entitled, finds himself held for military service and charged with desertion for not responding.

[1, 2] The obligation upon administrative boards, which exercise great powers, subject to but slight restrictions as to procedure and to only a limited review, is very great to deal fairly with the individual concerned, as well as with the public. The strict enforcement of this obligation is the only protection which the individual has against an abuse of such powers. The petitioner was plainly not subject to military service; and he was, without his fault, under great difficulties in understanding and obtaining his rights. Upon the case as a whole it does not seem to me that he has been fairly dealt with by the local board. He would, if not under arrest, be entitled either to a hearing in this court on his right to exemption (Chin Yow v. U. S., 208 U. S. 8, 13, 28 Sup. Ct. 201, 52 L. Ed. 369; Antrim's Case, Fed. Cas. No. 495), or to have these proceedings suspended, and to be discharged, unless accorded a fair hearing by the draft tribunals (United States v. Petkos, 214 Fed. 978, 131 C. C. A. 274 [C. C. A. 1st Cir.]).

[3] The ultimate question in the case is, therefore, whether the military authorities have the right to hold him for desertion. He was indisputably within the class of persons reached by the act and within the jurisdiction of the tribunals established thereunder. Their notification to report for service related to a matter also within their jurisdiction. Although based on irregular proceedings, it was not void. Until vacated, it was binding on the petitioner. It brought him under the jurisdiction of the military authorities, and rendered him liable to punishment by them for breach of military duty.

The petition must be dismissed, but without prejudice to the petitioner's right to file another petition.